FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

2012 JAN 18  A 11: 44

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| **MANOJ AGGARWAL** | : |
| -and- | : |
| **ANU AGGARWAL** | : |
| 9503 Peniwill Dr. | : |
| Lorton, VA 22079 | : |
|     Plaintiffs | : |
| | : |
| -and- | : |
| | : |
| **ENERGY DEPOT, INC.** | : |
| c/o Manoj Aggarwal & Anu Aggarwal | : |
| 9503 Peniwill Dr. | : |
| Lorton, VA 22079 | : |
|     Plaintiff | : |
| | : |
| v. | : |
| | : |
| **OM SIKKA** | : |
| last known address: 7907 Oak Hollow La. | : |
| Prince William Station, VA 22039 | : |
|     Defendant | : |
| | : |
| -and- | : |
| | : |
| **KAMLA SIKKA** | : |
| last known address: 7907 Oak Hollow La. | : |
| Prince William Station, VA 22039 | : |
|     Defendant | : |
| | : |
| -and- | : |
| | : |
| **YASH PAUL SIKKA** | : |
| last known address: 7907 Oak Hollow La. | : |
| Prince William Station, VA 22039 | : |
|     Defendant | : |
| | : |
| -and- | : |
| | : |

1:12 cv 60
TSE / TRJ

**{Caption continued on Following Page}**

-1-

**AUTO FUELS, INC.**
Serve Registered Agent:
Yash Paul Sikka
last known address: 7907 Oak Hollow La.
Prince William Station, VA 22039
        Defendant

    -and-

**PW PETROLEUM, INC.**
13295 Trowbridge Dr.
Woodbridge VA 22192
        Defendant
Serve Registered Agent
Marwan A. Kassem
3295 Trowbridge Dr.
Woodbridge VA ZIP: 22192


    -and-

**CHADY NASR**
4009 Bali Ct.
Woodbridge, VA 22192
        Defendant

    -and-

**CARINE MOUSSA a/k/a CARINE NASR**
**CHADY NASR**
4009 Bali Ct.
Woodbridge, VA 22192
        Defendant

    -and-

**{Caption continued on Following Page}**

**PETROLEUM MARKETING GROUP, INC.** :
10555 Main St. :
Fairfax, VA 22030 :
     Defendant :
-Serve Registered Agent- :
Houtan Mostaghim :
12680 Darby Brooke Ct :
Woodbridge VA 22192 :
 :
 :
   -and- :
 :
**BUSINESS BROKERS USA, INC.** :
916 West Broad St :
Falls Church, VA 22046 :
     Defendant :
-Serve Registered Agent- :
Himani Raheja :
916 W Broad St :
Falls Church VA 22046 :
 :
 :
   -and- :
 :
**MANINDER SINGH SETHI** :
c/o Business Brokers USA, Inc. :
916 West Broad St :
Falls Church, VA 22046 :
     Defendant :
 :
   -and- :
 :
**SURINDER SINGH RAHEJA, CPA** :
10700 Ellies Ct. :
Fairfax Station, VA 22039 :
     Defendant

## COMPLAINT FOR DAMAGES FOR BREACH OF
## CONTRACT, FRAUD, AND RELIEF UNDER
## THE RACKETEERING INFLUENCED CORRUPT PRACTICES ACT
## AND THE ROBINSON-PATMAN ACT
### (Jury Demand)

Come now the Plaintiffs by undersigned legal counsel and sue the Defendants for

damages arising out of the purchase of a gasoline service station and damages related to competition in the retail gasoline market as follows:

1. Plaintiffs Manoj and Anu Aggarwal are competent adults, husband and wife, residing at the address in the Caption. They are the holders of all of the shares of Plaintiff Energy Depot, Inc.

2. Plaintiff Energy Depot, Inc. is a Virginia corporation with its principal place of business listed in the Caption.

3. Defendants Om Sikka, Kamla Sikka and Yash Paul Sikka are competent adults residing at the address listed in the Complaint. Upon information and belief, all of these individuals are related and all of these individuals and one or more of these individuals are the holders of all of the shares of Defendant Auto Fuels, Inc.

4. Defendant Auto Fuels, Inc. is a Virginia corporation with its principal place of business as listed in the Caption.

5. Defendants Om Sikka, Kamla Sikka and Yash Paul Sikka are shareholders, directors, employees, contractors and/or authorized agents of Defendant Auto Fuels, Inc.

6. Defendants Om Sikka, Kamla Sikka and Yash Paul Sikka have a personal financial stake in Defendant Auto Fuels, Inc. and they personally benefit from transactions involving Defendant Auto Fuels, Inc.

7. Defendant PW Petroleum, Inc. is a Virginia corporation with its principal place of business as listed in the Caption.

8. Defendant Chady Nasr is a competent adult residing at the address listed in the Caption. Upon information and belief, this Defendant is related to Defendant Carine Moussa

a/k/a Carine Nasr and one or both of these individuals are the holders of all of the shares of

Defendant PW Petroleum, Inc.

9. Defendant Carine Moussa a/k/a Carine Nasr is a competent adult residing at the

address listed in the Caption.

10. Defendant Petroleum Marketing Group, Inc. is a Virginia corporation with its

principal place of business as listed in the Caption.

11. Defendant Business Brokers USA, Inc. is a Virginia corporation with its principal

place of business as listed in the Caption.

12. Defendant Maninder Singh is a competent adult conducting business at the address

listed in the Caption, which is his principal place of business. Upon information and belief,

Defendant Singh is the owner of some or all of the stock of Business Brokers USA, Inc. and he

provides services as a business broker and other services to Business Brokers USA, Inc., and he

is an officer, director, employee, contractor and/or authorized agent of Business Brokers USA,

Inc. and he financially benefits personally from the business conducted by Business Brokers

USA, Inc.

13. Defendant Surinder Singh Raheja, CPA is a Virginia licensed certified public

accountant conducting business in Virginia. He is affiliated with Defendant Business Brokers

USA, Inc. and he provides accounting services and financial statement verifications for

customers of that Defendant.

## JURISDICTION & VENUE

14. Jurisdiction is proper under 28 USC §1337, and 28 USC §1331, and 28 USC §1367 and 18 USC §1965.

15 - 16. Reserved.

17. Venue is proper pursuant to 28 USC §1391.

## FACTS COMMON TO ALL COUNTS

18. On or about July 22, 2008, Defendants Om Sikka, Kamla Sikka, Yash Paul Sikka and their corporation, Auto Fuels, Inc., and/or one or more of these individuals and entity, closed as sellers, on the purchase of the business assets of a then-branded Crown gasoline service station and convenience store located at 13295 Trowbridge Dr., Woodbridge, VA 22192 (herein the "Premises"). They purchased these assets from Defendant PW Petroleum, Inc. and/or Chady Nasr and/or Carine Moussa a/k/a Carine Nasr. In this Complaint, the individuals will be referenced collectively as "the Sikkas," Auto Fuels, Inc. will be referenced as "AFI," PW Petroleum, Inc. will be referenced as "PWP," Chady Nasr will be referenced as "Nasr" and Carine Moussa a/k/a Carine Nasr will be referenced as "Moussa a/k/a Carine Nasr."

19. On February 13, 2010, the Plaintiffs signed a Business Sales & Purchase Agreement (the "Purchase Agreement" herein) with Defendant Om Sikka for the purchase of the business conducted at the Premises, consisting of the gasoline service station and the convenience store. In this Complaint, the gasoline service station, convenience store, and related businesses will be referenced as the " Business".

20. Prior to signing the Purchase Agreement, Plaintiffs received a Confidential Business Abstract bearing a date of October 5, 2009 from Defendant Business Brokers USA Inc. (herein

"Business Brokers") and Defendant Sethi representing certain material financial information regarding the Business.

21. Prior to signing the Purchase Agreement, Defendant Business Brokers referred the Plaintiffs to a certified public accountant, Defendant Surender Singh Raheja, CPA (herein "Raheja") for the purpose of independently evaluating the purchase, including the financial viability of the Business. Defendant Business Brokers stated that Raheja was an independent certified public accountant and that he would provide them with an accurate and unbiased financial analysis of the Business and that he would also provide them with related independent advice concerning the Business.

22. Unknown to the Plaintiffs, until it was too late and they lost their entire life savings because of the fraud and other misconduct alleged herein, Raheja had a business relationship with Defendant Sethi whereby, among other things, Raheja would misrepresent the financial viability of businesses, and, in particular, gas stations, and, in particular, gas stations sold or supplied by Defendant PMG for the purpose of fraudulently inducing prospective buyers to purchase these gas stations or lease its gas stations and to enter into motor fuel supply agreements with Defendant PMG. As a result of these sales, Defendant Sethi would receive a commission and other compensation and things of value from Defendant PMG. Upon information belief, Defendant Raheja would receive undisclosed compensation from Defendant Sethi for engaging in this financial misconduct. Upon information belief, Defendants Sethi and Raheja have a family relationship.

23. Upon information and belief, Defendants Sethi and Raheja and Business Brokers USA, Inc. have a special business relationship with Defendant PMG whereby Defendants Sethi

and Raheja and Business Brokers USA, Inc. identify buyers of gasoline service stations, and in particular buyers of Indian descent and other foreigners, and induce them with fraudulent misrepresentations to purchase or lease or enter into supply agreements with Defendant PMG by misrepresenting the financial viability of these gasoline service stations, leases and supply agreements.

244. Defendant PMG is fully aware of this misrepresentations as alleged above and assists and participates in these schemes.

25. The Plaintiffs are of Indian descent and they were victims of this ongoing scheme, which constitutes an enterprise.

26. The information contained in the Confidential Business Abstract contained representations which were materially false and misleading and the false and misleading information was known by Defendants Business Brokers USA Inc. and Sethi and Raheja to be false and misleading, and this information was deliberately, or as a result of gross negligence, or as a result of negligence, presented to the Plaintiffs with the specific intent that the Plaintiffs rely upon this information in deciding to acquire the Business and the Plaintiffs did, in fact, reasonably rely on this information when they made a decision to acquire the Business.

27. In the alternative, the information contained on the Confidential Business Abstract contained representations which were materially false and misleading and the false and misleading nature of this information should have been known by Defendants Business Brokers USA Inc. and Sethi and Raheja to be false and misleading, and this information was deliberately, or as a result of negligence presented to the Plaintiffs despite the fact that these Defendants knew that the Plaintiffs would rely upon this information in deciding to acquire the Business and the

-8-

Plaintiffs did, in fact, reasonably rely on this information when they made a decision to acquire the Business. These Defendants had a duty to properly investigate the financial information presented to the Plaintiffs or to inform the Plaintiffs of correct and accurate financial information, or to unequivocally inform the Plaintiffs that they did not know whether or not this information was accurate or not, which duty they breached.

28. Defendant Raheja informed the Plaintiffs that he had reviewed the Confidential Business Abstract and that he had reviewed other financial information related to the Business and that the financial information and other representations stated and implied on this Confidential Business Abstract and other financial representations made by the Defendant sellers were accurate and that the business was an excellent acquisition at the price and that the Plaintiffs could expect to earn a substantial profit by operating the Business in the manner presented to them by Defendants Seti and Raheja and the sellers, the Sikka Defendants.

29. In fact, the financial information related to the Business as alleged above was materially false, misleading, and fraudulent and presented to the Plaintiffs Defendants Seti and Raheja and the Sikka Defendants with the intent that the Plaintiffs rely on this information in their decision to acquire the Business and the Plaintiffs did, in fact, detrimentally rely on this false and misleading and fraudulent information in making a decision to purchase the Business.

30. Said false, misleading and fraudulent information and misrepresentation were made by the said Defendants with the intent that the Plaintiffs rely on this misinformation to their detriment.

31. Additionally, the said Defendants represented that Defendant PMG was a favorable supplier of gasoline and other petroleum products and that the Plaintiffs would be benefitted by

entering into agreements with Defendant PMG to supply these products when, in fact, the petroleum products and gasoline to be supplied by Defendant PMG were grossly overpriced as alleged herein.

32. Defendant PMG has a history of selling businesses using these techniques through Defendants Business Brokers, Sethi and Raheja. This history constitutes an enterprise among these Defendants and their related corporate Defendants.

33. Defendant PMG has a regular practice of identifying and targeting immigrants and other foreign-born persons, engaging in scheme similar to the scheme set forth in this Complaint, and taking hundreds of thousands of dollars in down payments and hundreds of thousands of dollars in fuel overcharges and then driving said buyers out of business and then in some instances operating the gasoline service stations through affiliates and contractors and then reselling them again under the same conditions and using the same broker and accountant. This history constitutes an enterprise among these Defendants and their related corporate Defendants.

34. In order to induce the Plaintiffs to purchase Business, Defendant PMG represented to the Plaintiffs that if they accepted an assignment up the Motor Fuel Supply Agreement, they would be able to sell motor fuel profitably at the wholesale prices specified in said Agreement.

35. Defendant PMG knew or should have known that the Plaintiffs would not be capable of selling motor fuel profitably if they were required to purchase all of the motor fuel requirements pursuant to said Agreement.

36. Defendant PMG made these misrepresentations knowing that they were false and misleading, intending the Plaintiffs to rely on these misrepresentations, and knowing that the Plaintiffs will rely on these misrepresentations in deciding to purchase the Business and enter

into the Motor Fuel Supply Agreement.

37.  After acquiring the Business, the Plaintiffs discovered that, rather than being a business which was profitable, generating a "Owner's Net" of $120,000 a year, as stated in the Confidential Business Abstract and in other documents and information and representations made by the said Defendants, the Business was not profitable and was not capable of generating a profit.

38.  The reason why the Business was not capable of generating a profit was because the supply agreement with PMG resulted in the Business being required to purchase petroleum products at an inflated wholesale price under an exclusivity supply agreement with PMG. As a result, the Business was incapable of selling sufficient volume of petroleum products in competition with neighboring gasoline service stations to make a profit and, in addition, the Business was required to sell at a retail price which was in some instances lower than the wholesale price for petroleum products, in order to generate business volume.

39.  Defendant PMG knew of this characteristic of the Business and as a result, sought an successor to supply with motor fuel at the location, and participated in the misrepresentations concerning pricing of the wholesale motor fuel to induce the Plaintiffs to purchase the Business and lease the Business Premises from the Nasr Defendants.

40.  The pricing conditions for petroleum products described above in Paragraph 22 of this Complaint existed at the time when the Business was acquired by Defendants Om Sikka, Kamla Sikka, Yash Paul Sikka and their corporation, Auto Fuels, Inc.

41.  The pricing conditions for petroleum products sold by PMG under the exclusive agreement described above was at all times known to Defendants Om Sikka, Kamla Sikka, Yash

Paul Sikka and their corporation, Auto Fuels, Inc. and to Defendants Business Brokers USA Inc. and Sethi and Raheja.

42. The Nasr and Sikka Defendants and PMG would benefit financially from finding a successor to assume the Motor Fuel Supply Agreement because the retail motor fuel businesses of the Nasr and Sikka Defendants had failed at this location.

43. Said Defendants knew that said pricing conditions prohibited the Business from being operated profitably.

44. Said Defendants had a duty to disclose said pricing conditions as well as accurate financial information regarding the operation of the Business to the Plaintiffs prior to the Plaintiffs becoming obligated to purchase the Business.

45. None of said Defendants disclosed said pricing conditions or accurate financial information and, had they disclosed these matters, the Plaintiffs would not have purchased the Business.

46. Defendants PWP, and/or Nasr and/or Moussa a/k/a Carine Nasr where the owners of the Premises where the Business was conducted.

47. Said Defendants sold the Business to Defendants Om Sikka, Kamla Sikka, Yash Paul Sikka and their corporation, Auto Fuels, Inc.

48. Upon information belief, Defendants PWP, and/or Nasr and/or Moussa a/k/a Carine Nasr were not able to operate the Business profitably and they made materially false and misleading representations concerning the Business to Defendants Om Sikka, Kamla Sikka, Yash Paul Sikka and their corporation, Auto Fuels, Inc. in order to induce these persons and entities to purchase the Business and to lease the Premises from Defendants PWP, and/or Nasr and/or

-12-

Moussa a/k/a Carine Nasr.

49. Defendants Om Sikka, Kamla Sikka, Yash Paul Sikka and their corporation, Auto Fuels, Inc. Were not able to operate the Business profitably, and, as a result, they sold the Business to the Plaintiffs to get out from under the unprofitable operations.

50. The Plaintiffs interviewed Defendants PWP, and/or Nasr and/or Moussa a/k/a Carine Nasr prior to purchasing the Business and these Defendants reinforced the false and misleading representations concerning the favorable profitability of the Business as alleged in this Complaint in order to induce the Plaintiffs to purchase Business and to continue to lease the Premises from Defendants PWP, and/or Nasr and/or Moussa a/k/a Carine Nasr.

51. Defendants PWP, and/or Nasr and/or Moussa a/k/a Carine Nasr knew and intended that said favorable misrepresentations concerning the Business would induce the Plaintiffs to purchase the business and said Defendants would have a continuing stream of rental income.

52. Said misrepresentations by Defendants PWP, and/or Nasr and/or Moussa a/k/a Carine Nasr were reasonably relied upon by the Plaintiffs in their decision to purchase the Business and enter into a lease with these Defendants.

53. Plaintiffs did, in fact, reasonably rely upon said misrepresentations by Defendants PWP, and/or Nasr and/or Moussa a/k/a Carine Nasr in deciding to purchase the Business.

54. In order to induce the Plaintiffs to enter into the purchase of the Business, Defendants Business Brokers USA Inc. and Sethi conspired with Raheja to provide additional materially false and misleading information, deliberately or as a result of gross negligence, to the Plaintiffs; the Plaintiffs reasonably relied upon said false and misleading information in making a decision to purchase the Business.

-13-

55. Defendants Business Brokers USA Inc. and Sethi received a sales brokerage commission from the sale of the Business to the Plaintiffs. Upon information and belief, these defendants shared this commission with Defendant Raheja and/or Defendant Raheja received other financial benefits from the aforenamed Defendants and from PMG and/or their respective affiliates to induce said Defendant to make and reinforce said false financial information.

56. Upon information belief, Defendants Business Brokers USA Inc. and Sethi improperly shared this commission with Raheja, as an inducement for Raheja to falsify the results of the due diligence performed by Raheja. Said brokerage fee sharing arrangement was never disclosed to the Plaintiffs, although both of said Defendants had a duty and obligation to disclose this arrangement.

57. Defendants Business Brokers USA Inc. and Sethi engage in a regular business of brokering sales of gasoline service stations, convenience stores, and related businesses owned, controlled, and/or supplied with gasoline by Defendant PMG.

58. Defendants Business Brokers USA Inc. and Sethi derive a substantial portion of their revenue from transactions involving gasoline service stations in which PMG has an ownership interest or an interest as a fuel supplier, landlord, or similar relationship.

59. Defendant PMG entered into a Motor Fuel Supply Agreement originally dated May 1, 2006 with Defendant Chady Nasr and a non-party, and said Agreement was assigned to Defendants Auto Fuels, Inc, Om Sikka and Yash Sikka and Kamala Sikka on August 6, 2008, and assigned to Plaintiffs Energy Depot, Inc. and Manoj Aggarwal on April 22, 2010

60. Pursuant to this Motor Fuel Supply Agreement, PMG agreed to sell wholesale motor fuel to the Plaintiffs on the following terms and conditions: one cent per gallon above PMG's

-14-

cost to purchase the fuel at the terminal, plus transportation plus taxes and fees.

61. Pursuant to The Virginia Uniform Commercial Code, §8.2 – 305. Open Price Term, Defendant PMG has an obligation to sell wholesale motor fuel to the Plaintiffs for a reasonable price fixed in good faith.

62. In fact, Defendant PMG consistently sold all motor fuel to the Plaintiffs had a greatly inflated price which was unreasonable and in bad faith, being in some instances higher than the retail price charged by neighboring gasoline service stations for the same motor fuel. Defendant PMG knew in advance that it intended to sell motor fuel at such a price to the Plaintiffs.

63. Personnel of Defendant PMG reassured the Plaintiffs, falsely, that they would adjust the wholesale price of motor fuel and provide terms under which the Plaintiffs could operate the Business more profitably.

64. Despite said promises and reassurances, Defendant PMG continued the policy of overpricing motor fuel.

65. Pursuant to the Motor Fuel Supply Agreement, the Plaintiffs were obligated to purchase all of the motor fuels sold from the Business location from PMG under the terms of said Agreement.

66. Plaintiffs were not able to operate the business profitably because they were never able to generate a positive cash flow with the wholesale fuel prices charged by Defendant PMG.

67. In fact, unknown to the Plaintiffs until they closed the Business under extreme financial duress in early March, 2011, the Business had never been operated profitably.

68. Defendant PMG has a financial interest in continuing to sell wholesale fuel to the Business.

69. Defendants Business Brokers USA Inc. and Sethi are closely aligned with Defendant PMG. Said business brokers broker a large number of gasoline service station transactions for Defendant PMG.

70. Many of the gasoline service station transactions brokered for Defendant PMG involve situation similar to the instant situation, that is, situations in which the former proprietor of a gasoline service station business is driven out of business by the unreasonably high wholesale gasoline prices charged by Defendant PMG, and then a set of false and misleading financial documents are prepared and forwarded to a new buyer who, on reliance on these documents, purchases the business, making a substantial down payment, and then fails, at which time the cycle repeats. The Plaintiffs in this case are the third failed business at this location, based on the same set of facts and circumstances.

71. A similar situation exists in the case of *Kun Lee, et al. v PMG*, Case No. 02-C-09-141082, currently pending in the Circuit Court for Anne Arundel County, Maryland. In that case, Defendant PMG overpriced wholesale gasoline after the Plaintiffs in that case acquired the service station after it had closed.

72. In the case of *Gondel v. PMG*, Civil No. 2011-07927, Defendants Business Brokers USA Inc. and Sethi provided materially false and misleading information in order to induce the Plaintiffs to purchase a gasoline service station and related real estate from an affiliate of Defendant PMG. Thereafter, Defendant PMG charged unreasonably high wholesale prices and this resulted in the Plaintiffs losing all their savings and going out of business. Defendants Business Brokers USA Inc. and Sethi brokered the Gondel transaction.

73. In the case of *Hasan et al. v. PMG*, Case No. 02-C-06-116010, in the Circuit Court

-16-

for Anne Arundel County, Maryland, the jury found that Defendant PMG committed fraud in inducing the plaintiffs in that case to purchase a gasoline service station from Defendant PMG where Defendant PMG also supply the motor fuel to this location, under similar terms and conditions.

74. The three court cases referenced above all involve a fact pattern where foreign-born individuals were fraudulent induced to purchase or lease gasoline service stations under the circumstances as alleged above.

75. The material false and misleading representations made by the various Defendants, as alleged above, were made by telephone, fax and e-mail as well as being made in person.

76. Defendant PMG directly and through affiliates which it controls owns and operates retail gasoline service stations in the same market area as is served by the Business.

77. Defendant PMG regularly provides motor fuel to the retail gasoline stations which it owns and operates directly and through affiliates and to others at a materially lower wholesale price than the price charged to the Plaintiffs.

78. As a direct and proximate result of this price disparity, but Plaintiffs were inhibited and/or prevented from competing in the sale of motor fuel with other retail gasoline service stations to which Defendant PMG supplied wholesale motor fuel.

## COUNT ONE - BREACH OF CONTRACT - LEASE

79. Plaintiffs, by this reference, reallege all matters in all prior paragraphs herein as if fully set forth.

80. The Defendants PW Petroleum, Inc. and/or Chady Nasr and/or Carine Moussa a/k/a

Carine Nasr breached the Lease by inducing the Plaintiffs to enter into the Lease on the basis of fraudulent misrepresentations as alleged, and specifically by making representations to the Plaintiffs that the Business was the operated profitably if supplied by Defendant PMG as alleged.

81.  Said false, misleading and fraudulent misrepresentations also constitute a breach of any and all agreements related to the Lease as fraud in the inducement.

82.  As a direct and proximate result of said breach, the Plaintiffs are entitled to the following relief:

A.  Return of all monies paid as rent and related charges;

B.  Reimbursement for losses incurred in acquiring and operating the business in the amount in excess of $400,000.00;

C.  Damages for lost profits for the period of operations in the amount of approximately $120,000.00 or more, the actual amount to be proven at trial;

D.  Damages for lost profits of operation projected over the Lease term in the amount of approximately $360,000.00 or more, the actual amount to be proven at trial;

E.  Punitive damages of $2,000,000.00; and

F.  Pre-judgment and postjudgment interest, costs and attorneys' fees of this lawsuit.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants in the amounts set forth above, plus prejudgment and postjudgment interest, plus costs and attorney's fees.


## COUNT TWO - BREACH OF CONTRACT - BUSINESS ACQUISITION

83.  Plaintiffs, by this reference, reallege all matters in all prior paragraphs herein as if fully set forth.

84. The Defendants Om Sikka, Kamla Sikka, Yash Paul Sikka and their corporation, Auto Fuels, Inc. breached the Business Acquisition Agreement by inducing the Plaintiffs to enter into said Agreement on the basis of fraudulent misrepresentations as alleged.

85. Said false, misleading and fraudulent misrepresentations also constitute a breach of any and all agreements related to the Business Acquisition Agreement, constituting fraud in the inducement.

86. As a direct and proximate result of said breach, the Plaintiffs are entitled to the following relief:

A. Return of all monies paid related to the acquisition of the Business, including the purchase price, any due diligence expense and related charges;

C. Reimbursement for losses incurred in acquiring and operating the business in the amount in excess of $400,000.00;

D. Damages for lost profits for the period of operations in the amount of approximately $120,000.00 or more, the actual amount to be proven at trial;

E. Damages for lost profits of operation projected over the Lease term in the amount of approximately $360,000.00 or more, the actual amount to be proven at trial;

F. Punitive damages in the amount of $2,000,000.00

G. Pre-judgment and postjudgment interest, costs and attorneys' fees of this lawsuit.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants in the amounts set forth above, plus prejudgment and postjudgment interest, plus costs and attorney's fees.

## COUNT THREE - BREACH OF CONTRACT - ACCOUNTING MALPRACTICE

87. Plaintiffs, by this reference, reallege all matters in all prior paragraphs herein as if fully set forth.

88. Defendant Raheja breached his statutory and common law duty to properly perform financial and other related due diligence to determine accurately the viability and profitability of the Business, after being retained for this express purpose by the Plaintiffs, including without limitation those duties set forth in Va. Code §54.1-4413.3.

89. Plaintiffs reasonably and justifiably relied upon the information, representations and reports provided by the Defendant Accountant in making their decision to purchase and to continue to operate the Business.

90. The information, representations and reports provided by the Defendant Raheja were materially false and misleading.

91. As a direct and proximate result of said accounting malpractice, the Plaintiffs are entitled to the following relief:

A. Damages, consisting of all monies paid as rent, as operating losses of the business, as monies invested in the business and as rent and related charges to all these categories;

C. Reimbursement for losses incurred in acquiring and operating the business in the amount in excess of $400,000.00;

D. Damages for lost profits for the period of operations in the amount of approximately $120,000.00 or more, the actual amount to be proven at trial;

E. Damages for lost profits of operation projected over the Lease term in the amount of approximately $360,000.00 or more, the actual amount to be proven at trial;

-20-

F. Pre-judgment and postjudgment interest, costs and attorneys' fees of this lawsuit.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants in the amounts set forth above, plus prejudgment and postjudgment interest, plus costs and attorney's fees.

## COUNT FOUR - FRAUD - BUSINESS BROKER

92. Plaintiffs, by this reference, reallege all matters in all prior paragraphs herein as if fully set forth.

93. The Defendants Business Brokers USA Inc. and Sethi induced the Plaintiffs to enter into the Lease and Purchase Agreement and Motor Fuel Supply Agreement, as alleged by making false and misleading statements to the Plaintiffs as alleged, knowing that these statements were false and misleading, making these statements with the intention that Plaintiffs rely on said statements to their detriment as alleged, and the Plaintiffs reasonably relied on said false, misleading and fraudulent statements and by referring the Plaintiffs to Defendant Raheja as alleged.

94. Said fraudulent misrepresentations also induced the Plaintiffs to continue to invest in the gasoline service station and continue to fund its losing operation until the Plaintiffs lost everything that they own.

95. As a direct and proximate result of said fraud, the Plaintiffs were damaged in the amount of approximately $400,000.00 in out-of-pocket losses, plus approximately $120,000.00 or more in lost profits which should have been earned during the operations period, plus approximately $360,000.00 or more in lost profits which should have been earned over the remaining term of the Business acquired pursuant to the Business Acquisition Agreement, as

-21-

alleged above, and the Plaintiffs are entitled to prejudgment and postjudgment interest, costs and attorneys' fees.

96. The fraudulent misrepresentations alleged in this Complaint were made by the Defendants with actual and implied in law malice toward the Plaintiffs.

97. The Plaintiffs are entitled, in addition to the compensatory damages alleged above, to punitive damages in the amount of $2 million or such amount has may be proven at trial.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants in the amounts set forth above, plus prejudgment and postjudgment interest, costs and attorney's fees.

## COUNT FIVE - CIVIL CONSPIRACY

98. Plaintiffs, by this reference, reallege all matters in all prior paragraphs herein as if fully set forth.

99. The Sikka Defendants, the Nasir/Moussa Defendants, Defendant Business Brokers USA, Inc., Defendant Sethi and Defendant Raheja and their related corporations conspired to fraudulently induce the Plaintiffs to purchase the Business by making the fraudulent misrepresentations alleged above.

100. This conduct constitutes a civil conspiracy as defined in Va. Code §18.2-500.

101. As alleged above, the Plaintiffs, as a direct and proximate result of this civil conspiracy, suffered actual damages in the amount of $880,000.

102. Pursuant to said section of the Virginia Code, Plaintiffs are entitled to recover treble damages, that is, the amount of $2,664,000, as well as their costs of this suit and attorney's fees.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants in the amount of

$880,000 trebled to $2,664,000, plus prejudgment and postjudgment interest, costs and attorney's fees.

## COUNT SIX - BREACH OF MOTOR FUEL SUPPLY AGREEMENT

103. Plaintiffs, by this reference, reallege all matters in all prior paragraphs herein as if fully set forth.

104. As alleged, Defendant PMG supplied motor fuel to the Plaintiffs at a price which was unreasonable under the Virginia Uniform Commercial Code.

105. As a direct and proximate result of this breach of contract, the Plaintiffs' business failed and they lost their entire investment in the Business.

106. Additionally, as a direct and proximate result of this breach of contract, the Plaintiffs lost substantial sums of money attempting to keep the business open.

106. Additionally, Defendant PMG induced the Plaintiffs to continue operating the Business by making representations to them that the pricing disparities would be rectified allowing them to operate profitably.

108. In direct and detrimental reliance on said representations, the Plaintiff continued to operate the business at a loss for an extended period of time.

109. The Plaintiffs are entitled to the following relief:

A. Damages, consisting of all monies paid as rent, as operating losses of the business, as monies invested in the business and as rent and related charges to all these categories;

C. Reimbursement for losses incurred in acquiring and operating the business in the amount in excess of $400,000.00;

-23-

D. Damages for lost profits for the period of operations in the amount of approximately $120,000.00 or more, the actual amount to be proven at trial;

E. Pre-judgment and postjudgment interest, costs and attorneys' fees of this lawsuit.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants in the amounts set forth above, plus prejudgment and postjudgment interest, plus costs and attorney's fees.

## COUNT SEVEN - "RICO" - BROKER, ACCOUNTANT, PMG

110. Plaintiffs, by this reference, reallege all matters in all prior paragraphs herein as if fully set forth.

111. As alleged, the Defendants engaged in a pattern of racketeering, consisting of defrauding buyers of retail gasoline service stations as alleged, by communicating false, fraudulent and misleading information over the telephone calls originating and terminating in the United States, via e-mail originating in the United States directed to United States recipients, and via United States mail. In addition to the Plaintiffs, the Defendants have also engaged in the same pattern of conduct as alleged in the Complaint systematically with others to whom the Defendants and their affiliates and agents sell property, rent property and supply gasoline.

112. In the instant case, as alleged, Defendant PMG and Defendants Business Brokers USA Inc. and Sethi and Raheja conspired with Defendant PMG to induce the Plaintiffs to enter into the Motor Fuel Supply Agreement related to the acquisition of the Business, deliberately withholding from the Plaintiffs information related to the improper and predatory pricing practices of Defendant PMG, and also making misrepresentations to the Plaintiffs concerning the profitability and motor fuel sales volume of the Business.

-24-

113. All of these Defendants also conspired to provide false and misleading material information concerning the Business in order to induce the Plaintiffs to purchase and continue to operate the Business, knowing that the Plaintiffs would purchase and continue to operate the Business on the basis of such false and materially misleading information. Said false and materially misleading information was communicated to the Plaintiffs in person, over the telephone and fax and via email.

114. Defendants are liable to Plaintiffs under the Racketeering Influenced Corrupt Practices Act, 18 USC §1961 *et seq.* as well as under the Virginia version of this Act, Va. Code §§18.2-512 *et seq.*

115. In addition to the fraud and other predicate acts as alleged herein, the Defendants communicated with the Plaintiffs and others in furtherance of the scheme and enterprise as alleged via telephone, through the mail, via fax and via e-mail.

116. As alleged above, the "enterprise" in which the Defendants engaged was to systematically misrepresent the volume of gasoline and other business characteristics to induce buyers to purchase or lease gasoline service stations, to enter into exclusive agreements to supply motor fuel, and then to continue to operate the gasoline stations and continue to purchase wholesale motor fuel after they had proven to be unprofitable.

117. As alleged, all such Defendants engaged in this conduct as an "enterprise," with the Plaintiffs and with other purchasers and sellers of retail motor fuel businesses. This enterprise is conducted in interstate commerce.

118. The enterprise was carried out through telephone conversations and fax transmissions, the United States mail, e-mail (all of which originated and terminated in the

-25-

United States) and in person contacts, and through licensed real estate and business brokers and accountants.

119. In addition to the conduct of these Defendants in the instant case, the Defendants have engaged in similar and virtually identical conduct regarding other purchases of gasoline service stations. In particular, the Defendants engaged in misconduct with respect to the Gondels.

120. Plaintiffs are entitled to $888,000 actual damages as specified above.

121. Plaintiffs also demand punitive damages from the Defendants in the amount of $2 million or such amount has may be proven at trial.

122. Plaintiffs may also recover from Defendants prejudgment and postjudgment interest, costs and attorneys fees.

123. Plaintiffs are entitled to treble damages pursuant to the civil RICO statutory scheme and they demand treble damages in this case.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants in the amount of $888,000.00, trebled to $2,664,000, plus $2 million in punitive damages, plus prejudgment and postjudgment interest, costs and attorney's fees.


## COUNT EIGHT - VIOLATION OF THE ROBINSON-PATMAN ACT

124. Plaintiffs, by this reference, reallege all matters in all prior paragraphs herein as if fully set forth.

125. As alleged, Defendant PMG supplies wholesale motor fuel to other retail gasoline service stations, particularly those owned and operated by this Defendant and its subsidiaries and

-26-

affiliates, at a wholesale motor fuel price substantially below the wholesale price which it charges the Plaintiffs, in the market area served by the gas station acquired by the Plaintiffs and in interstate commerce.

126. Defendant PMG also supplies wholesale motor fuel to other gasoline retailers which it supplies, which are not its affiliates, at a higher wholesale price.

127. The relevant market area with respect to this Plaintiff is a 500 mile radius from the Business premises, as an automobile can travel approximately 500 miles on a tank of gas and an automobile with a full tank of gas within the 500 mile radius could be expected to patronize the Plaintiff's Business and other similarly situated businesses located within that radius.

128. Said price disparity prevents and, at all relevant times, prevented the Plaintiffs and others from competing with those gasoline service stations supplied by Defended PMG at lower wholesale prices.

129. As such, Defendant PMG has injured competition and, specifically, injured the ability of the Plaintiffs to compete in the relevant market for retail gasoline sales as alleged.

130. Pursuant to the Robinson-Patman Price Discrimination Act, 15 USC §2(a) Defendant PMG engaged in unlawful price discrimination as alleged.

131. Plaintiffs are entitled to $888,000 actual damages as specified above.

132. Plaintiffs also demand punitive damages from the Defendants in the amount of $2 million or such amount has may be proven at trial.

133. Plaintiffs may also recover from Defendants prejudgment and postjudgment interest, costs and attorneys fees.

134. Plaintiffs are entitled to treble damages pursuant to the Robinson-Patman and

Virginia statutory scheme and they demand treble damages in this case.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants in the amount of $888,000.00, trebled to $2,664,000, plus $2 million in punitive damages, plus prejudgment and postjudgment interest, costs and attorney's fees.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

Respectfully submitted,

/s/ Thomas F. DeCaro, Jr.
Thomas F. DeCaro, Jr. #34649
Attorney for Plaintiffs
14406 Old Mill Rd. #201
Upper Marlboro, MD 20772
703-255-0090 phone
301-464-4776 fax
tfd@erols.com   E-mail