IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MANOJ AGGARWAL, *et al.*,          )
                                   )
                                   )
                  Plaintiffs,      )
        v.                         )          Civil Action No. 1:12cv60 (TSE/TRJ)
                                   )
OM SIKKA, *et al.*,                )
                                   )
                  Defendants.      )
                                   )

## MEMORANDUM OPINION

The court has under advisement the Motion for Sanctions Under Rule 11 (no. 220) and

Motion for an Award of Attorneys' Fees and Expenses (no. 230) filed by Chady Nasr, Carine

Moussa Nasr and PW Petroleum, Inc. (collectively "Counterclaim Plaintiffs").

The summary judgment order (no. 188) includes a discussion of the facts and the

allegations underlying this case, which makes extensive recitation here unnecessary. Briefly

stated, Counterclaim Defendants purchased a gas station business from Om Sikka, Kamla Sikka,

Yash Paul Sikka and Auto Fuels, Inc. (collectively "Sikka Defendants"), who had purchased it

from Plaintiff/Counterclaim Defendants Manoj Aggarwal, Ann Aggarwal and Energy Depot, Inc.

(collectively "Counterclaim Defendants"). The transaction also included assignment by the

Sikka Defendants of a lease of the real estate on which the gas station was located, which

Counterclaim Plaintiffs owned.

Counterclaim Defendants filed their Initial Complaint (no. 1) against various

combinations of eleven (11) defendants, including Counterclaim Plaintiffs on January 18, 2012.

As to Counterclaim Plaintiffs, that complaint alleged a breach of contract claim regarding the

commercial lease involving the gas station property leased to Counterclaim Defendants by Counterclaim Plaintiffs, and civil conspiracy. Counterclaim Plaintiffs filed a motion (no. 34) to dismiss that complaint on March 28, 2012. This court heard Counterclaim Plaintiffs' motion to dismiss, together with the motion to dismiss (no. 4) filed by Petroleum Marketing Group, Inc. ("PMG"), on March 30, 2012. The court granted (no. 42) PMG's motion with leave to amend, but rescheduled the hearing on Counterclaim Plaintiffs' motion to dismiss, allowing Counterclaim Plaintiffs to file supplements to their motion based on the amended complaint.

Counterclaim Defendants filed their First Amended Complaint (no. 47) on April 13, 2012, alleging both the breach of contract and civil conspiracy claims again, and adding Counterclaim Plaintiffs to their alleged RICO violation claim. In its order (no. 67) dated June 12, 2012, the court treated the breach of contract claim against Counterclaim Plaintiffs as fraud in the inducement, and found that the First Amended Complaint failed to provide sufficient details to satisfy Rule 9(b). On this basis, the court granted the motion to dismiss, with leave to amend. The court also granted the motion, with leave to amend, as to the civil conspiracy claim and the portion of the RICO claim arising under 18 U.S.C. § 1962(d). The court granted the motion with prejudice as to the RICO claim against Counterclaim Plaintiffs under 18 U.S.C. §§ 1962(a) and (c).

Counterclaim Defendants filed their Second Amended Complaint on June 25, 2012, alleging fraud in the inducement, civil conspiracy, and RICO violations against Counterclaim Plaintiffs. Counterclaim Plaintiffs filed their second motion to dismiss (no. 75) on July 6, 2012, and the court found that Counterclaim Defendants had alleged sufficient facts to survive

dismissal at that point. *See* doc. no. 90. Counterclaim Plaintiffs then filed their Answer and Counterclaim (no. 96) on August 27, 2012.

Counterclaim Plaintiffs filed their motion for summary judgment (no. 155) on December 31, 2012. The court heard argument on the motion on February 1, 2013, and granted summary judgment as to the civil conspiracy count and the RICO violation at that time. *See* doc. no. 181. The court deferred judgment on the remaining fraud in the inducement count, and on the Counterclaim. *Id.* On February 22, 2012, the court issued an order on the remaining claims (no. 188), granting Counterclaim Plaintiffs' summary judgment as to the Second Amended Complaint and as to the Counterclaim with respect to liability for breach of the Lease Agreement. The court denied summary judgment as to the Counterclaim with respect to the amount of damages associated with the breach of the Lease Agreement, and as to liability and damages with respect to the car wash on the property. *See* doc. no. 188.

The parties then consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). The court conducted a bench trial on the remaining issues on April 1, 2013, and took the matter under advisement. Counterclaim Plaintiffs then filed the present motions. Counterclaim Defendants filed several documents (nos. 227, 228, 236) in opposition to the Motion for Sanctions Under Rule 11, but did not file an opposition to the Motion for Attorneys' Fees.

The court has now entered judgment on the matters that were not resolved on summary judgment.

### A. Motion for an Award of Attorneys' Fees and Expenses

In their motion, Counterclaim Plaintiffs provide two bases for their entitlement to attorneys' fees and expenses. First, they cite to the Lease Agreement (Nasr Exh. 11) and the Guarantee of the Lease Agreement (Nasr Exh. 14), both of which contain provisions providing that the prevailing party in an action to interpret the Lease Agreement or Guarantee is entitled to receive attorneys' fees and expenses. Second, they argue that they are entitled to receive attorneys' fees and costs pursuant to 28 U.S.C. § 1927, due to Counterclaim Defendants' unreasonable and vexatious multiplication of the proceedings in this matter. These issues will be dealt with in turn.

### 1. The Lease

The Lease Agreement provides in relevant part:

> Should either party institute any action or proceeding at law or in equity to enforce or to interpret any provision of the Lease for damages or other relief by reason of an alleged breach of any provision hereof, the prevailing party shall be entitled to receive, in addition to allowable court costs, such amount as the court may adjudge to be reasonable as attorney's fees for the services rendered to the prevailing party in such action or proceeding[.] Should either party without fault on its part, be made a party to any litigation instituted by or against the other party, the other party covenants to pay to the party against whom the action is instituted all costs and expenses, including reasonable attorney's fees, incurred by the party against whom the action is instituted or in connection with such litigation.

Nasr Exh. 11 at ¶ 41. This provision clearly covers both Counterclaim Plaintiffs' assertion of their rights under the Lease and their defense against the claims provided herein by Counterclaim Defendants.

The Lease Agreement was assigned to Counterclaim Defendants via two documents executed by the parties here, as well as the former Sikka Defendants. The Assignment and Assumption of Lease (Nasr Exh. 12) states in relevant portion: "Acceptance and Assumption.

4

The Assignee hereby accepts and assumes all obligations undertaken by Tenant to be paid, performed or observed by Tenant under the Lease...." ¶ 2. Second, the Lease Assignment and Modification (Nasr Exh. 13) provides: "Assignee hereby unconditionally assumes observance and performance of all of the terms, covenants and conditions of the Lease on the 'Tenant's' part to be performed and observed under the Lease, as modified herein." ¶ 3. The Lease Assignment and Modification contains no modifications to the attorneys' fees provision of the Lease Agreement. Counterclaim Defendants at no point argued that this assignment was improper or ineffective, or that they were not subject to all terms of the Lease Agreement (perhaps because they sued Counterclaim Plaintiffs based on this very document), and the court finds that Counterclaim Defendants assumed all obligations under the Lease Agreement, as modified by the Lease Assignment and Modification.

The Lease Agreement contains a choice of law provision stating that Virginia law controls. *Id.* at ¶ 37. Virginia law looks favorably upon such choice of law provisions, and as all relevant contracts in this action were executed in Virginia and were to be performed in Virginia, the court finds that application of Virginia law is appropriate in this instance. *Ingram Micro Inc. v. ABC Mgmt. Tech. Solutions, LLC*, 746 F. Supp. 2d 765, 769 (E.D. Va. 2010).

Under Virginia law, "courts uphold the intent of the contracting parties as expressed through contractual language." *Foothill Capital Corp. v. E. Coast Bldg. Supply Corp.*, 259 B.R. 840, 844 (E.D. Va. 2001). A court must give full effect to every clause, and apply the plain meaning where the language is unambiguous. *SunTrust Mortgage, Inc. v. AIG United Guar. Corp.*, 784 F. Supp. 2d 585, 592 (E.D. Va. 2011). And, in Virginia, "contractual provisions shifting attorneys' fees ... are valid and enforceable." *Airlines Reporting Corp. v. Sarrion Travel,*

*Inc.*, 846 F. Supp. 2d 533, 536 (E.D. Va. 2012) (quoting *Signature Flight Support Corp. v. Landow Aviation Ltd. Partnership*, 730 F.Supp.2d 513, 518 (E.D.Va.2010)).

As Counterclaim Defendants neglected to file an opposition to the instant motion, and the court sees no apparent ambiguity in the language of paragraph 41, the court is required to give the clause full effect and apply its plain meaning.

Having granted summary judgment in their favor as to the Second Amended Complaint and with respect to liability for breach of the Lease Agreement, the court found that Counterclaim Plaintiffs were without fault. As Counterclaim Defendants initiated this litigation, making Counterclaim Plaintiffs parties to this action, the court finds that Counterclaim Plaintiffs are entitled under paragraph 41 of the Lease Agreement to receive payment for their reasonable attorneys' fees and costs incurred in this litigation.

### Reasonable Attorneys' Fees

As the court has found that Counterclaim Plaintiffs are entitled to payment for their reasonable attorneys fees from Counterclaim Defendants pursuant to the Lease Agreement, the court must determine the reasonableness of the requested fees. In the Fourth Circuit, a plaintiff must establish the reasonableness of the number of hours worked, as well as the reasonableness of the requested rates (the product of which provides the reasonable attorney's fee, or lodestar figure). *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990); *Cook v. Andrews*, 7 F.Supp.2d 733, 736 (E.D.Va. 1998). The procedure for determining the reasonable fee for a particular case is provided by *Grissom v. Mills Corp.*, 549 F.3d 313 (4th Cir. 2008), in light of the Supreme Court's guidance in *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662 (2010). *Bradford v. HSBC Mortg. Corp.*, 859 F. Supp. 2d 783, 790 (E.D. Va. 2012). The court is required to take the

following analytical steps: 1) calculate the lodestar (the product of hours worked and hourly rate) in light of the *Johnson/Barber*[1] factors; 2) analyze how many hours were spent reasonably litigating the successful versus unsuccessful claims; and 3) subtract out those hours worked on unsuccessful claims that were unrelated to the successful claims. *Id.* at 789. The court need not independently address all of the *Johnson/Barber* factors, as "such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Freeman v. Potter*, 2006 WL 2631722 at *2 (W.D. Va. 2006) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9 (1983)). Finally, it is important to note that "the degree of success obtained by plaintiff" is "the most critical factor" in determining the reasonableness of a fee award. *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 671 (E.D. Va. 2004) (quoting *Hensley*, 461 U.S. at 436-437).

Counsel for Counterclaim Plaintiffs has submitted detailed billing records annexed to the present motion as Exhibit B. Based on this document, over the course of fifteen (15) months of litigation beginning April 13, 2012, partner Kenneth Curtis expended 380.80 hours of time at a rate of $300 per hour, 108.20 hours of associate time were billed at a rate of $175 per hour, and 45.50 hours of paralegal time were billed at a rate of $100 per hour. Exh. B at 21. The court has found for Counterclaim Plaintiffs in nearly every respect thus far, granting summary judgment as

---

[1] These factors include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber v. Kimbrell's*, 577 F.2d 216, 226 (4th Cir. 1978) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

to the Second Amended Complaint and as to their Counterclaim with respect to liability for breach of the Lease Agreement. The court denied summary judgment as to the Counterclaim only with respect to the amount of damages associated with the breach of the Lease Agreement and as to liability and damages with respect to the car wash on the property. Thus, the most important of the *Johnson/Barber* factors, the results obtained for the client, clearly mitigates in favor of finding such fees reasonable. *Lilienthal*, 322 F. Supp. 2d at 671. Additionally, the court has personally reviewed the bills reflecting time spent by counsel. In light of the court's experience with other similar cases litigated in this court and direct experience with the litigation of the pretrial and trial phases of this litigation, the court finds that the time spent was reasonably necessary in the circumstances of this dispute.

With respect to the reasonableness of the rates, Counterclaim Plaintiffs must also prove that the hourly rates charged were reasonable. This necessarily requires a fact-intensive inquiry, and affidavits from counsel indicating the precise fees and hours worked will have to be supported by additional "satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009) (quoting *Plyler*, 902 F.2d at 277).

In support of this motion, counsel for Counterclaim Plaintiffs has provided counsel Kenneth Curtis' *curriculum vitae* as Exhibit 4 to the motion, and this document indicates that counsel has been practicing law in the area for over thirty-five (35) years. Also annexed as Exhibit 5 to this motion is a copy of the 2010 National Law Journal Billing Survey, showing

hourly rates for various law firms around the country, as well as the *Laffey* Matrix[2] annexed as

Exhibit 6.  Counterclaim Plaintiffs have not submitted any further specific evidence of the

reasonableness of the proposed rates, and the court recognizes that it is not bound to accept as

reasonable the rates contained in either of the charts provided.  However, the court may still

consider the charts if it finds them to be useful.  *Ebersole v. Kline-Perry*, 2012 WL 4473247, at

*14 (E.D. Va. Sept. 26, 2012) (citing *Newport News Shipbuilding & Dry Dock Co. v. Holiday*,

591 F.3d 219, 229 (4th Cir. 2009).  Regardless, this court has chosen to assess the reasonableness

of attorneys' rates in the Northern Virginia area based on the Fourth Circuit's modified *Laffey*

matrix provided in *Grissom* (the "*Grissom* table"), which Counterclaim Plaintiffs have annexed

as Exhibit 7 to this motion.  *Grissom*, 549 F.3d at 323 (citing *Plyler*, 902 F.2d at 277); *Ebersole*,

2012 WL 4473247 at *15.

     According to the original *Grissom* table, the maximum reasonable rate for an attorney

with over twenty (20) years of experience is $380 per hour, and the maximum reasonable rate for

an attorney with one to three (1-3) years of experience is $180 per hour.  *Grissom*, 549 F.3d at

322.  The court finds that a rate of $300 per hour for partner Kenneth Curtis is eminently

reasonable, based on the *Grissom* table, the fact that counsel for Counterclaim Plaintiffs has over

thirty-five (35) years of litigation experience, and the court's personal knowledge and experience

regarding the rates charged in the Eastern District of Virginia by attorneys of comparable

experience.  The court also finds that the rate of $175 per hour for the associate who worked on

this case is reasonable when considering the *Grissom* table and inflation since its creation, as is

---

    [2] The *Laffey* Matrix is used as a guideline for reasonable attorneys fees in the
Washington/Baltimore area and can be found on the United States Attorney's Office for the District
of Columbia's website, http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf.

the $100 per hour rate for the paralegal involved in this litigation. All of these rates are well

within the actual rates charged by attorneys in the Easter District of Virginia, as evidenced by this

court's opinion in *Tech Sys., Inc. v. Pyles*, 2013 WL 4033650 (E.D. Va. Aug. 6, 2013), in which

the court found an attorney's fee of $375 per hour for an attorney with twenty-four (24) years of

experience and a fee of $280 per hour for an attorney with one (1) year of experience both to be

reasonable.

Counterclaim Plaintiffs filed their billing records for this litigation as Exhibit 3 to the

motion. That documentation indicates that Mr. Curtis spent 380.80 hours at a rate of $300 per

hour, that an associate spent 108.20 hours at a rate of $175 per hour and a paralegal spent 45.50

hours at a rate of $100 per hour all on the instant litigation. As the court has found both the

amount of time spent on the present litigation and the rates charged to be reasonable, the full

requested amount of $137,725.00 is also necessarily reasonable.

With respect to the costs requested by Counterclaim Plaintiffs, the court has been

provided with a breakdown in Exhibit 3 to this motion. The costs requested include $5,600.96 in

deposition fees, $401.20 in court filing fees, $80.00 for a title search on Counterclaim

Defendants' home, $110.00 in service of process fees, $73.00 for parking at the courthouse,

$204.25 in FedEx charges, $57.85 in other postage charges, $1,340.00 for copying, and $113.27

for trial exhibit materials. Exh. 3 at 21. The court finds that the amounts with respect to

deposition fees, court filing fees, service of process fees, FedEx and postage charges, and costs

for trial exhibits were reasonably necessary to effectively litigate the present matter to

conclusion. The court finds that the remaining costs demanded should not be awarded.

### 2. Sanctions Under 28 U.S.C. § 1927

Counterclaim Plaintiffs also request sanctions in the form of attorneys' fees pursuant to 28 U.S.C. § 1927. The court finds that the conduct of counsel for Counterclaim Defendants did not fall to a level warranting sanctions under § 1927. Therefore, the court cannot impose sanctions under this section.

Section 1927 states: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Under Fourth Circuit precedent, bad faith is a precondition to the imposition of fees, and the focus is on abuse of court processes, rather than the merits of the litigation. *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012). The real issue is the attorney's conduct, and whether the attorney "multiplied" the proceedings. *Id.*

Conduct that has been found sufficiently unreasonable and vexatious to warrant sanctions under 28 U.S.C. § 1927 varies in the case law. While aggressive litigation tactics will not provide the basis for sanctions under § 1927, it is appropriate for a court to grant sanctions where an attorney engages in "reckless behavior that demonstrates a conscious disregard for a foreseeable risk that proceedings will be unreasonably and vexatiously multiplied." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 2012 WL 6540072 (E.D. Va. Dec. 13, 2012) (internal quotations and citations omitted).

Counterclaim Plaintiffs argue strenuously that the sheer number of filings in this case and the lack of merit of Counterclaim Defendants' claims support granting attorneys fees under § 1927. However, as stated above, the merits of the litigation is not the focus or intent of this

11

section. Therefore, the court must review the tactics and behavior of counsel for Counterclaim Defendants, rather than the mere outcome of the litigation, to determine whether sanctions are appropriate under § 1927.

As for evidence of sanctionable conduct under § 1927, Counterclaim Plaintiffs provide little in their motion. The motion refers the court to Counterclaim Plaintiffs' Pre-Trial Legal Memorandum (no. 206) and their Reply to the Pre-Trial Memorandum of the Plaintiffs (no. 218) as well. After reviewing these documents as well, however, the arguments raised focus primarily on the merits of Counterclaim Defendants' claims, and this misses the point of § 1927. *See* docs. 206 at 5-7, 218 at 6-7.

The court will also consider the number of pleadings (at the time of this opinion that number is 238) and the duration of the litigation in this matter (the Initial Complaint was filed January 18, 2012) as some evidence of dilatory practices on the part of counsel for Counterclaim Defendants. That said, this case involved several other parties and claims at the outset. Even when considered in addition to the actions discussed above, this evidence is insufficient to entitle Counterclaim Plaintiffs to the attorneys' fees and costs which they request under § 1927.

The court finds that counsel for Counterclaim Defendants did not so unreasonably and vexatiously multiply the proceedings in this matter as to warrant sanctions under § 1927. Therefore, the court declines to impose sanctions under this section.[3]

---

[3] The one argument that Counterclaim Plaintiffs make in passing that has some relevance to the question at hand relates to the filing of Counterclaim Defendants' Second Amended Complaint. Counsel for Counterclaim Defendants re-filed claims in their Second Amended Complaint (no. 68) which had been dismissed with prejudice by order of this court on June 12, 2012. Specifically relevant to the issue here, the court dismissed Counterclaim Defendants' claims under 18 U.S.C. §§ 1962(a) and (c) against the Counterclaim Plaintiffs. However, counsel for Counterclaim Defendants re-filed these claims in the Second Amended Complaint on June 25, 2012. Another of the

**B. Motion for Sanctions Under Rule 11**

Counterclaim Plaintiffs filed a separate Motion for Sanctions Under Rule 11 (no. 220), which requests that the court sanction both Counterclaim Defendants and their counsel, and also award Counterclaim Plaintiffs their costs and attorneys fees incident to this litigation.

Fed. R. Civ. P. 11 creates obligations for counsel litigating in federal court. First, an attorney must sign all pleadings filed with the court, thereby certifying that: "…the factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery…." Fed. R. Civ. P. 11(b)(3). Second, the rule mandates that documents shall not be "…presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation…." Fed. R. Civ. P. 11(b)(1). A party intending to move for sanctions under Rule 11 is required to provide notice pursuant to Rule 5, as well as allow a twenty-one (21) day "safe harbor" period from the time of notice to the time of filing of a motion for sanctions, during which time the allegedly sanctionable "paper, claim, defense, contention, or denial" may be withdrawn. Fed. R. Civ. P. 11(c)(2).

---

defendants (Petroleum Marking Group) that has since been dismissed from this litigation filed a motion for sanctions based on this conduct, and the court granted that motion on August 10, 2012 (no. 92). The court found that counsel for Counterclaim Defendants had clearly violated the court's order, as there was no good faith basis for repleading counts for which leave to amend was not granted. Even if counsel's conduct falls within the meaning of § 1927 in this regard, the court declines to invoke that statute in this limited respect, given the award of counsel fees on another basis.

While the court "must not impose a monetary sanction against a represented party for violating Rule 11(b)(2),"[4] Counterclaim Plaintiffs argue that Counterclaim Defendants have personally violated Rule 11(b)(1) and (3), and "the court may impose an appropriate sanction on any attorney, law firm, *or party* that violated the rule or is responsible for the violation." Fed. R. Civ. Pro. 11(c)(1) (emphasis added); *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 548 (1991) (concluding "that Rule 11 applies to represented parties"). As "any party who signs a pleading, motion, or other paper" has "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing," a court may impose sanctions on a represented party where that party signs a document submitted to the court. *Bus. Guides* 498 U.S. at 550-551. All of that said, the court has found no case law imposing such a duty on parties who have not signed (and thereby certified under Rule 11) documents filed with the court. As neither the Initial Complaint, the First Amended Complaint, nor the Second Amended Complaint were signed by Counterclaim Defendants, the court finds no basis for applying Rule 11 to Counterclaim Defendants personally. *See* docs. 1,47, 68. On this basis, Counterclaim Plaintiffs' motion with respect to Counterclaim Defendants personally is therefore denied.

With regard to counsel for Counterclaim Defendants, Counterclaim Plaintiffs first provided notice of their intention to pursue sanctions under Rule 11 against him if the claims as to the Counterclaim Plaintiffs were not dismissed in a letter dated January 31, 2013.[5] *See* doc.

---

[4] Fed. R. Civ. Pro. 11(c)(5)(A).

[5] The court recognizes that counsel for Counterclaim Plaintiffs emailed counsel for Counterclaim Defendants on May 9, 2012, raising the issue of counsel for Counterclaim Plaintiffs' pre-filing investigation. However, the court does not find that this email constituted sufficient notice for purposes of Fed. R. Civ. P. 11(c)(2). Therefore, the court finds that the safe harbor period did not begin at this date.

221, Exh. 1. As this court has found that notice via such a letter is acceptable under Rule 11, and because the instant motion was filed on March 31, 2013, the safe harbor period was more than satisfied. *Moore v. Southtrust Corp.*, 392 F. Supp. 2d 724, 736 (E.D. Va. 2005). The question whether counsel for Counterclaim Defendants violated Rule 11 is therefore properly before the court.

Counterclaim Plaintiffs raise two arguments supporting their motion for sanctions under Rule 11: 1) that counsel for Counterclaim Defendants failed to conduct a reasonable pre-filing investigation, and 2) that counsel for Counterclaim Defendants filed the present litigation for an improper purpose. These arguments will be dealt with in turn.

### Pre-Filing Investigation

As Rule 11 provides that an attorney's signature on any paper filed with this court is a certification as to the merits of those documents, there is an obligation on all attorneys to "conduct a reasonable investigation of the factual and legal basis for his claim before filing." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). It is often inappropriate to blindly rely on the client without additional investigation. *In re Kunstler*, 914 F.2d 505, 514 (4th Cir. 1990). The attorney's inquiry must generally uncover some credible factual support for the claims. *Brubaker*, 943 F.2d at 1373. That is to say, attorneys may not rely solely on the discovery process to find factual support for claims *after* they file. *In re Kunstler*, 914 F.2d at 515 ("While a lawyer may rely on discovery to reveal additional facts to support claims which are well grounded in fact, Rule 11 sanctions are appropriate when a lawyer attempts to use discovery to support outrageous and frivolous claims for which there is no factual support."). The court is directed to use an objective test to determine the reasonableness of the pre-filing

investigation. *Id.* at 514. The court's review is necessarily two-pronged: determining whether the Initial Complaint was both well grounded 1) in fact and 2) in law. *Id.* at 514, 517.

Here, as discussed above, counsel for Counterclaim Defendants proceeded to file three complaints, adding additional factual contentions each time, until the court found that the facts pled were sufficient to withstand Counterclaim Plaintiffs' (and the other defendants') 12(b)(6) motions. These additional factual allegations were available to counsel for Counterclaim Defendants at the outset based on the knowledge of his own client, Manoj Aggarwal. For instance, in the Second Amended Complaint, the Aggarwals alleged that Counterclaim Plaintiffs had confirmed that the business operated profitably, that fuel was being purchased at a favorable wholesale price, that the Motor Fuel Supply Agreement was for a five year term, and that the rate would be renegotiated on favorable terms at the conclusion of the agreement. Doc. 68 at ¶¶ 22, 28. These assertions were made in far more vague terms in the Initial Complaint, lacking any specific facts. Doc. 1 at ¶¶ 48, 50. Additionally, in the Initial Complaint and the First Amended Complaint, counsel alleged that the Counterclaim Plaintiffs made misrepresentations prior to the closing on the business, but in the Second Amended Complaint admits that this was not so. *See* docs. 47 at ¶ 25, 68 at ¶ 28.

Counsel for Counterclaim Defendants' failure to conduct a reasonable pre-filing investigation is made ever clearer from the deposition of Manoj Aggarwal, one of the individual Counterclaim Defendants and the 30(b)(6) designee for Energy Depot, Inc. Mr. Aggarwal testified that, as of February 13, 2010, the date on which he entered into the Business Sales and Purchase Agreement, he had not met Counterclaim Plaintiffs. Doc. 236, Ex. 2 at 130:19-21. Also, Mr. Aggarwal testified that he had no idea at the time that he signed this agreement that

16

Counterclaim Plaintiffs had ever run the business. Doc 236, Exh. 2 at 202:15-21. Mr. Aggarwal testified that he accepted the assignment of the Motor Fuel Supply Agreement without ever having seen it, although he had repeatedly requested a copy and was aware of his right to delay signing the assignment until he was provided with one. Doc 236, Exh. 2 at 159:03-160:07, 246:11-15, 247:02-05. According to Mr. Aggarwal's own testimony, he went to the closing on the business knowing he had not seen all of the documents he needed to review in order to determine if the business was profitable. Doc 236, Exh. 2 at 203:01-05. Finally, Mr. Aggarwal testified that nothing Counterclaim Plaintiffs did had any effect on his decision to purchase the business. Doc 236, Exh. 2 at 202:07-21.

With respect to the fraud in the inducement count, had counsel for Counterclaim Defendants conducted a reasonable pre-filing investigation, he certainly would have found these facts from his own client. The Fourth Circuit has recognized that "an isolated, inadvertent error does not justify Rule 11 sanctions." *In re Bees*, 562 F.3d 284, 288 (4th Cir.2009). However, these facts that counsel for Counterclaim Defendants failed to uncover prior to filing the Initial Complaint go to the heart of the fraud in the inducement count, and it cannot be said that they are isolated factual oversights.

As for the question whether the fraud in the inducement count was well grounded in law, a legal argument violates Rule 11(b)(2) when it has "absolutely no chance of success under the existing precedent," or when "a reasonable attorney in like circumstances could not have believed [his] actions to be legally justified." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002). In his opposition to this motion, counsel for Counterclaim Defendants continues to argue the merits of this claim, referring again to an insurance fraud case that the

17

court found inapposite at trial, and again gives no weight here. Doc. 228, pp. 1-2. Counsel's reference to an exception to the rule of *caveat emptor* is also unpersuasive. Doc. 228, pp. 3-4.

In its summary judgment order, the court found that none of the statements referred to by counsel for Counterclaim Defendants in the Second Amended Complaint, even if true, when considering the full summary judgment record, would support a claim for fraud in the inducement under well settled law. *See* doc. 188. Counsel for Counterclaim Defendants could have and should have known of these facts – all of which were available from his own client on proper inquiry – prior to filing the Initial Complaint. Those facts clearly undermined the claim of fraud in the inducement. Knowing these facts, any reasonable attorney in his position would have determined that this claim lacked merit.

Counsel for Counterclaim Defendants argues in his opposition as to the conspiracy and RICO claims that Counterclaim Defendants conducted a review of the operating history of the gas station owned by Counterclaim Plaintiffs that indicated that the station operated at a loss. Doc. 236 at 2. Additionally, counsel for Counterclaim Defendants indicated that he possessed personal knowledge of other instances in which defendants PMG and Business Brokers USA, Inc. had been involved in gas station sales where the historical operating results were materially misstated. *Id.* Counsel argues that these facts combined to provide a reasonable basis to believe this was a comparable case.

An attorney may perhaps rely solely on information from a client where additional facts would be necessary to support that claim (such as in a conspiracy claim). *In re Kunstler*, 914 F.2d at 516. However, where a cursory investigation would have uncovered the lack of factual support for that claim, an attorney's failure to investigate is sanctionable conduct. *Id.* Counsel

was obligated to conduct a reasonable pre-filing investigation as to the factual and legal basis of the claims alleged in the Initial Complaint.

Counsel for Counterclaim Defendants' own client, Mr. Aggarwal, testified that he was aware of no facts supporting either the conspiracy or the RICO claim. Doc 236, Exh. 2 at 194:07-196:07; 206:10-207:11. Additionally, counsel for Counterclaim Defendants' personal knowledge of prior incidents involving defendant PMG in which improper conduct was an issue provide no basis for his belief that such conduct had occurred here. These incidents did not involve Counterclaim Plaintiffs, and the facts are entirely outside of the present dispute. Clearly such knowledge was not as a result of any pre-filing investigation conducted in or for this matter, and those facts have no bearing on the factual basis of the claims here.

As a simple conversation with Mr. Aggarwal would have revealed the complete lack of factual support for the conspiracy and RICO claims as to Counterclaim Plaintiffs, it is clear that counsel for Counterclaim Defendants either neglected to conduct such an interview, or decided to proceed knowing these claims lacked factual support. Counsel for Counterclaim Defendants was able to glean no facts indicating any sort of coordinated activity on the part of Counterclaim Plaintiffs here that would be actionable as either a conspiracy or a RICO violation. Instead, he made a bald assertion of the existence of a conspiracy and RICO violation without the requisite factual basis, thereby failing to comply with his obligations under Rule 11. It is thus apparent to the court that counsel for Counterclaim Defendants did not conduct a proper pre-filing investigation to establish the factual basis of the claims in the Initial Complaint. Therefore, the court finds that counsel has violated Rule 11 and that sanctions are appropriate thereunder.

**Improper Purpose**

Counterclaim Plaintiffs also argue that the Initial Complaint was filed for an improper purpose. While it is a close question, the court is unable to find that counsel for Counterclaim Defendants' conduct here descends to this level.

It is appropriate to impose sanctions under Rule 11 if the court finds that an attorney has filed documents with a purpose "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). This is by no means to say that these factors are exclusive. *In re Kunstler*, 914 F.2d at 518. The court is directed to judge the conduct of counsel "under an objective standard of reasonableness rather than by assessing subjective intent." *Stevens v. Lawyers Mut. Liab. Ins. Co. of North Carolina*, 789 F.2d 1056, 1060 (4th Cir.1986). However, it is clear that "filing a motion or pleading without a sincere intent to pursue it will garner sanctions." *In re Kunstler*, 914 F.2d at 518.

Counsel for Counterclaim Defendants repeatedly referred in his papers to his personal knowledge of and involvement in cases related to other questionable dealings by former defendant PMG as a basis for his filing of the Initial Complaint. *See* docs. 1 at ¶¶ 32-33, 228 at 5, 236 at 2. This indicates that facts outside of this case influenced counsel's decision to file the instant action in this court, which certainly would be improper. Additionally, as Counterclaim Plaintiffs point out, Counterclaim Defendants did not take any depositions in this case or designate a single expert witness. As collecting factual support for the case or proving damages in a case such as this without taking depositions or designating an expert witness would be

difficult if not impossible, Counterclaim Plaintiffs argue that this indicates that counsel for Counterclaim Defendants may simply have been hoping for a quick settlement of the matter, rather than having any real intention of litigating this case.

A finding that "counsel never intended to litigate the action, is the one which most clearly supports sanctions based on a finding of improper purpose." *In re Kunstler*, 914 F.2d 505 at 519. The court, however, is unable to find on this record that counsel for Counterclaim Defendants filed the Initial Complaint with such an intent. As Counterclaim Plaintiffs point out in their Motion for Attorneys' Fees, counsel for Counterclaim Defendants has in fact extensively litigated this case, resulting in 238 docket entries to date. While Counterclaim Plaintiffs' suspicion is understandable, the court cannot find on this record that counsel for Counterclaim Defendants filed this suit simply to get a quick settlement.

While the court found that the Initial Complaint was lacking in terms of legal and factual basis, the court is unable to find that counsel for Counterclaim Defendants' conduct warrants a finding of improper purpose under Rule 11.

### Amount of Sanction

Having found that sanctions are appropriate under Rule 11, the court must now determine the appropriate sanction under the circumstances. It is important to bear in mind the purposes of sanctions under Rule 11, those being "punishing the violating party, compensating the victim of the violation, and, most importantly, deterring future violations." *Harmon v. O'Keefe*, 149 F.R.D. 114, 117 (E.D. Va. 1993) (citing *In re Kunstler*, 914 F.2d at 522). To guide the court, "the Fourth Circuit has identified four factors courts should consider when imposing Rule 11

21

sanctions: '(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to

deter; (3) the ability to pay; and (4) factors relating to the severity of the Rule 11 violation.'"

*Myers v. Am.'s Servicing Co.*, 227 F.R.D. 268, 270 (E.D. Va. 2005) (quoting *In re Kunstler*, 914

F.2d 505, 523 (4th Cir. 1990)).  In choosing a sanction, the court is "required to choose the least

severe sanction adequate to accomplish the purpose of Rule 11." *In re Kunstler*, 914 F.2d at 523.

Additionally, Fourth Circuit authority is clear that "sanctions based on attorney's fees may only

account for fees incurred in responding to the sanctioned claims." *Giganti v. Gen-X Strategies,*

*Inc.*, 222 F.R.D. 299, 314 (E.D. Va. 2004).

Analyzing the factors as the court must, the issue of reasonableness of the opposing

party's fees has been dealt with above and need not be revisited, as the court has found those fees

to be reasonable in the context of this litigation.

With regard to the severity of the violation, the details of counsel for Counterclaim

Defendants' actions in this litigation that led to the present motion for sanctions are presented

above.  The Fourth Circuit has provided further guidance on this factor as well, indicating that

the court should consider "the offending party's history, experience, and ability, the severity of

the violation, the degree to which malice or bad faith contributed to the violation, the risk of

chilling the type of litigation involved, and other factors as deemed appropriate in individual

circumstances." *In re Kunstler*, 914 F.2d at 524-25.

Considering the repeated allegation of facts for which counsel had no evidence, the

assertion of claims lacking merit, the re-pleading of claims that had been dismissed with

prejudice, the unnecessarily extensive length of the litigation in this matter and the repeated

warnings from opposing counsel, the factors weigh in favor of a significant sanction.

Additionally, counsel for Counterclaim Defendants is an experienced attorney and apparently

failed to undertake any significant pre-filing investigation. *See Kraemer v. Grant County*, 892

F.2d 686, 688-89 (7th Cir. 1990) (attorney was a recent law school graduate, and had hired a

private investigator to look into his client's allegations, mitigating against significant sanctions).

That said, the court does not find that counsel for Counterclaim Defendants acted with malice or

bad faith in this litigation.  Finally, the court finds that there is no risk of chilling this type of

litigation if a sanction is imposed under the circumstances.

      As far as the minimum amount to deter and the ability of the sanctioned party to pay, the

Fourth Circuit has provided specific guidance:

> Although the burden is upon the parties being sanctioned to come forward with
> evidence of their financial status, a monetary sanction imposed without any
> consideration of ability to pay would constitute an abuse of discretion. A court
> should refrain from imposing a monetary award so great that it will bankrupt the
> offending parties or force them from the future practice of law. Generally, the
> smaller the amount of the monetary sanction imposed, the greater the likelihood
> that a court's consideration of the ability to pay will not want for lack of the
> formal submission of evidence on a sanctioned party's financial status. When the
> monetary sanction is large, however, the parties should generally be given the
> opportunity to submit affidavits on their financial status, or to submit such other
> evidence as the court's discretion permits. In this case, the amount of the monetary
> sanction originally imposed was substantial, and the parties should have been
> afforded the opportunity to submit evidence on the issue of whether the amount
> imposed was so great as to unfairly restrict their access to the courts or to
> otherwise curtail their ability to practice law or to cause them great financial
> distress. *In re Kunstler*, 914 F.2d at 524.

In order to effectively determine the appropriate amount of sanctions, the court requires that

counsel for Counterclaim Defendants submit a statement of his financial condition in the form of

a sworn affidavit within fourteen (14) days of the filing of this opinion.  The affidavit may be

filed under seal.  The court therefore refrains from making any findings on the minimum amount to deter or the sanctioned party's ability to pay at this time.

Appropriate orders will issue.

_____ /s/

Thomas Rawles Jones, Jr.
United States Magistrate Judge

November 7, 2013
Alexandria, Virginia